UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

YASMEEN ABOUSHARKH,

    Plaintiff,

v.                        Case No. 8:20-cv-1036-VMC-AEP

JENKINS NISSAN, INC.,

    Defendant.
_____/

**ORDER**

This matter comes before the Court pursuant to Defendant Jenkins Nissan, Inc.'s Motion in Limine (Doc. # 51), filed on July 1, 2021. Plaintiff Yasmeen Abousharkh responded on July 15, 2021. (Doc. # 54). For the reasons that follow, the Motion is granted in part and denied in part.

**I.   Background**

Abousharkh initiated this case on May 4, 2020. (Doc. # 1). She filed her amended complaint on June 17, 2020, asserting claims against her former employer for sex discrimination (including sexual orientation discrimination) under Title VII and the Florida Civil Rights Act (FCRA) (Counts I, II, VII, and VIII), disability discrimination in violation of the Americans with Disabilities Act (ADA) and FCRA (Counts III and IV), retaliation in violation of the

1

FCRA (Count V), and Florida Whistle Blower Act retaliation (Count VI). (Doc. # 12). Summary judgment has since been granted on the disability discrimination and sexual orientation discrimination claims (Counts III, IV, VII and VIII), but the claims for sex discrimination and retaliation (Counts I, II, V and VI) survive. (Doc. # 63).

Jenkins filed the instant Motion, seeking to exclude various categories of evidence. (Doc. # 51). Abousharkh has responded (Doc. # 54), and the Motion is ripe for review.

## II.  Legal Standard

"A motion in limine presents a pretrial issue of admissibility of evidence that is likely to arise at trial, and as such, the order, like any other interlocutory order, remains subject to reconsideration by the court throughout the trial." In re Seroquel Prods. Liab. Litig., Nos. 6:06-md-1769-ACC-DAB, 6:07-cv-15733-ACC-DAB, 2009 WL 260989, at *1 (M.D. Fla. Feb. 4, 2009). "The real purpose of a motion in limine is to give the trial judge notice of the movant's position so as to avoid the introduction of damaging evidence which may irretrievably [a]ffect the fairness of the trial." Id. (internal quotation omitted). "A court has the power to exclude evidence in limine only when evidence is clearly

2

inadmissible on all potential grounds." Id. (internal quotation omitted).

"A motion in limine is not the proper vehicle to resolve substantive issues, to test issues of law, or to address or narrow the issues to be tried." LSQ Funding Grp. v. EDS Field Servs., 879 F. Supp. 2d 1320, 1337 (M.D. Fla. 2012)(citing Royal Indem. Co. v. Liberty Mut. Fire Ins. Co., No. 07-80172-CIV, 2008 WL 2323900, at *1 (S.D. Fla. June 5, 2008)). "Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted at trial." In re Seroquel, 2009 WL 260989, at *1 (internal quotation marks omitted). "Instead, denial of the motion means the court cannot determine whether the evidence in question should be excluded outside the trial context." Id. "The court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion in limine." Id.

The district court has broad discretion to determine the admissibility of evidence, and the appellate court will not disturb this Court's judgment absent a clear abuse of discretion. United States v. McLean, 138 F.3d 1398, 1403 (11th Cir. 1998); see also United States v. Jernigan, 341 F.3d 1273, 1285 (11th Cir. 2003)("Inherent in this standard is the firm

recognition that there are difficult evidentiary rulings that turn on matters uniquely within the purview of the district court, which has first-hand access to documentary evidence and is physically proximate to testifying witnesses and the jury.").

Federal Rule of Civil Procedure 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Irrelevant evidence is inadmissible. Fed. R. Evid. 402. All relevant evidence is admissible unless "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 402, 403; United States v. Ross, 33 F.3d 1507, 1524 (11th Cir. 1994). Use of Rule 403 to exclude relevant evidence is an "extraordinary remedy" whose "major function . . . is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." United States v. Grant, 256 F.3d 1146, 1155 (11th Cir. 2001).

III. **Analysis**

Jenkins seeks to exclude four categories of evidence:
(1) references to allegations of changing mileage on
vehicles; (2) evidence of other litigation that Jenkins has
been or is a party to; (3) the criminal history of Mario
Dorado; and (4) stray comments of employees. (Doc. # 51 at 1-
2). As Jenkins' Motion is unopposed as to the changing of
mileage of vehicles (Id. at 2; Doc. # 54 at 1 n.2), the Motion
is granted as to that category of evidence. The Court will
address the other three categories below.

A. **Other Litigation**

Jenkins moves under Rule 403 to preclude Abousharkh from
introducing evidence of three prior lawsuits and one ongoing
lawsuit against Jenkins. (Doc. # 51 at 5-10). One lawsuit
involves claims for disability discrimination, the second
involves claims for sexual harassment and retaliation, the
third involves claims for retaliation, and the fourth
involves claims for sexual harassment and assault and
battery. (Id.). According to Jenkins, any evidence or
testimony "relating to prior litigation [it] has been a party
to, presently a party to or may be a party to is irrelevant
and its probative value is substantially outweighed by the

danger of unfair prejudice that [Jenkins] may face if the evidence is presented to a jury." (Id. at 10).

Abousharkh argues that the existence of the other lawsuits should be introduced because they are "highly relevant to the issue of punitive damages," which she does seek in her amended complaint. (Doc. # 54 at 2). She insists that all the cases she intends to introduce "involve the same decision-maker, Brian Fivecoat [], and the same departments (the two locations of [Jenkins] that Fivecoat had authority over)." (Id.). Thus, she reasons, "the evidence will show that [Jenkins] engaged in multiple similar instances of discrimination and retaliation, which go directly to the issue of [Jenkins'] reckless disregard for Abousharkh's federally protected rights." (Id.).

"[E]vidence of other lawsuits is not normally relevant and not permitted." Rushing v. Wells Fargo Bank, N.A., No. 8:10-cv-1572-SCB-AEP, 2012 WL 3155790, at *1 (M.D. Fla. Aug. 3, 2012); see also Palmer v. Bd. of Regents of Univ. Sys. of Ga., 208 F.3d 969, 973 (11th Cir. 2000)("[W]e do not find any merit to Palmer's argument that the district court abused its discretion in excluding evidence of the existence of the other lawsuits against the University System. The complaints that

6

she sought to introduce involved different decision-makers, different departments, and different hiring processes.").

The Court considers the other litigation here of little probative value. First, even if Fivecoat were the same decisionmaker in all the cases, three of the four cases involve different claims than those that still survive in this case. Specifically, the Regusa case involved disability discrimination (Doc. # 54-1), but summary judgment has been granted on Abousharkh's disability discrimination claims. (Doc. # 63 at 1, 6). The Pagan case involved claims for both sexual harassment and retaliation, while the Rodriguez case involves claims of sexual harassment and assault in battery. (Doc. # 54-2; Doc. # 54-3). In contrast, this case only involves claims of mixed-motive sex discrimination and retaliation. Second, no adjudication of liability against Jenkins has been made in any of the four cases — one case is still pending, one was dismissed for failure to timely serve Jenkins, and two were settled — leaving these cases to be composed merely of unsubstantiated allegations.

Thus, even if Abousharkh is only interested in this evidence to support punitive damages, the prejudicial value of this evidence still outweighs its probative value generally. There is a serious risk of a jury interpreting the

7

existence of other litigation as proof that Jenkins discriminated or retaliated against Abousharkh in this case. Thus, Abousharkh may not introduce this evidence in her case in chief. "However, depending on the evidence offered at trial, evidence of other lawsuits might be used for impeachment." Id. The Court may address the admissibility of this evidence for impeachment purposes — if necessary — during trial. The Motion is granted in part and denied in part as to this evidence.

    **B.**   **<u>Criminal History</u>**

Jenkins seeks to exclude any evidence or argument regarding the criminal history of Jenkins employee, Mario Dorado, who was Abousharkh's supervisor for the relevant part of her employment. (Doc. # 51 at 10). Twenty-five years ago, Dorado was charged with attempting to impersonate a law enforcement officer, unlawful installation of radio equipment to monitor, and unlawful use of a police badge. (Id.). These charges were brought when Dorado was twenty-one years old. (Id.). From the court records, it is unclear to which charges Dorado pled guilty or no contest, and which charges were reduced to a lesser offense. (Doc. # 54-5).

Jenkins argues these convictions should be excluded under Federal Rule of Evidence 609(b)(1) because the

convictions are over ten years old, and their probative value is outweighed by the prejudicial effect. (Doc. # 51 at 11). Indeed Rule 609(b) provides that, "if more than 10 years have passed since the witness's conviction or release from confinement for it," then "[e]vidence of the conviction is admissible only if: (1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use." Fed. R. Evid. 609(b). "Under that rule, there is a presumption against using stale convictions to attack a witness's character for truthfulness." United States v. Hairston, 627 F. App'x 857, 859 (11th Cir. 2015). "The proponent must show 'exceptional circumstances justifying the use of an over-age prior conviction.'" Id. at 860 (citation omitted).

Abousharkh argues that the probative value of these convictions outweighs the prejudicial effect because "one of the key disputed issues of material fact is whether Dorado terminated Abousharkh's employment on [] May 25, 2019." (Doc. # 54 at 4). While Dorado maintains he did not terminate Abousharkh, Abousharkh alleges that he did terminate her employment that day. (Id.). Notably, Abousharkh insists

Dorado's convictions go to his credibility not because of the convictions themselves, but because Dorado allegedly lied about these convictions during his deposition.

True, during his deposition, Dorado said he had never "been convicted of a crime of dishonesty or fraud." (Doc. # 29-3 at 9:22-24). Yet, as mentioned, it is unclear for which charges Dorado was convicted and which charges were reduced. Thus, the Court is not certain at this time if Dorado was actually convicted for the crime of dishonesty of attempting to impersonate a police officer. And it is unclear whether the other charges — unlawful installation of radio equipment to monitor and unlawful use of a police badge — qualify as crimes of dishonesty. Without knowing whether Dorado was convicted of a crime of dishonesty, the Court cannot determine whether Dorado lied under oath such that his convictions would be highly probative for use as impeachment.

Given this uncertainty regarding the offenses of conviction and the fact that witness credibility is a substantial issue in this case, the Court will not exclude Dorado's criminal history at this stage. If Dorado was in fact convicted of crimes of dishonesty (rather than pleading guilty to lesser offenses), the probative value of Dorado's twenty-five-year-old convictions would substantially

outweigh their prejudicial effect because of Dorado's deposition testimony that he had no such convictions. The Motion is denied as to this request. Jenkins may raise this argument again at trial.

### C.  <u>Sexist Comments</u>

Jenkins seeks to exclude testimony that Abousharkh and one of her former supervisors, Glen McGuire, heard other Jenkins employees, including Fivecoat, make certain sexist statements about women. (Doc. # 51 at 13). According to Jenkins, these various statements should be excluded because Abousharkh has not alleged a hostile work environment claim and Abousharkh did not report some of the alleged statements to human resources during her employment. (<u>Id.</u> at 14).

The Court disagrees. Although she is not proceeding under a hostile work environment theory, Abousharkh has asserted sex discrimination claims against Jenkins, arguing that her sex was a motivating factor for the adverse employment actions taken against her. Sexist statements, especially those made by the alleged decisionmaker Brian Fivecoat or in his presence, are certainly probative of whether Abousharkh's sex was a motivating factor for the adverse employment actions she suffered. And the Court cannot

say that the prejudicial effect of these statements outweighs their probative value.

Thus, the Court will not exclude these statements under Rule 403 at this time. Jenkins may raise objections to the introduction of specific statements during trial, if appropriate.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant Jenkins Nissan, Inc.'s Motion in Limine (Doc. # 51) is **GRANTED** in part and **DENIED** in part. No evidence regarding changing mileage on vehicles may be introduced at trial. Evidence of other litigation may not be introduced in Plaintiff's case in chief, but the Court will address its use for impeachment purposes, if necessary, at trial. The Court will not exclude the other categories of evidence at this time.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 17th day of September, 2021.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE